UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0 - 80

CIV - COHN

MAGISTRATE JUDGE
SNOW

STG SECURE TRADING GROUP, INC., and STG SECURE TRADING GROUP, LLC,

Plaintiffs,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Defendant,
_________________________________/

**EMERGENCY COMPLAINT FOR INJUNCTIVE RELIF, EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF LAW**

Plaintiffs STG Secure Trading Group, Inc., and STG Secure Trading Group, LLC, by and through undersigned counsel, hereby sue the United States Securities and Exchange Commission for Injunctive Relief and files this Emergency Motion for Temporary Restraining Order and Memorandum of Law as follows:

## COMPLAINT

Plaintiffs STG Secure Trading Group, Inc., and STG Secure Trading Group, LLC by and through undersigned counsel, hereby sue the United States Securities and Exchange Commission for Injunctive Relief and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff STG Secure Trading Group, Inc. is a Florida corporation located in Palm Beach County, Florida, and Plaintiff STG Secure Trading Group, LLC, is a

Florida limited liability company located in Palm Beach County, Florida (hereinafter, the Plaintiffs will be collectively referred to as "STG").

2. Upon information and belief, Defendant UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC") is a United States governmental agency.

3. A substantial portion of the wrongs giving rise to the Complaint occurred in and were felt in the Southern District of Florida. A substantial part of the events giving rise to the claim occurred here.

4. Jurisdiction exists over the Defendant and this matter pursuant to 15 U.S.C. § 78(u) and 28 U.S.C. § 1391(e).

5. Venue is proper under 28 U.S.C. § 1391(e).

**FACTUAL BACKGROUND**

6. STG is a group of businesses involved in the securities industry.

7. On January 10, 2005, with no prior warning, the SEC appeared at STG's office in Boca Raton, Florida, demanded access to STG's computer server, demanded to have CD ROM disks made by STG copying the contents of its server and demanded that STG immediately comply with these demands or face being considered as failing to comply with the SEC's regulatory requests and thereby risk punishment. STG thereby complied with the requests of its regulator and provided complete copies of the contents of its computer server. See Affidavit of Scott Budner, attached hereto as Exhibit "A." Contained in those disks provided to the SEC were attorney/client confidential communications which were not in any way intended to be provided to the SEC and as will be shown hereafter, were requested to be returned and the SEC has failed and refused to return the privileged communications. In fact, when STG discovered the mistake, it

was originally told by the SEC that the communications would not be viewed, however, later. the SEC began asking questions to STG which showed that the SEC was obviously viewing those communications which the SEC had previously represented it would not view and hence the actions of the SEC have necessitated this lawsuit and action.

8. In fact, to show that STG has always been of the mindset that no attorney client privileged communications should be viewed by the SEC, Mr. Budner provided a letter to the SEC on January 26, 2005, a true and correct copy of which is attached hereto as Exhibit "B." In the portion of the letter titled "Additional Documents Requested," Mr. Budner stated that "I believe that all correspondence with any of the multiple lawyers this firms works with are protected by the attorney client privilege" and went on to say regarding the SEC's complete access to STG's files: "which by the way in no way means that I agree that you can review any of my correspondence with my lawyers or personal health information that my have been in the files. I do not think that you took any of that information. but if you did, I request you return it immediately." Mr. Budner wrote this letter as a result of the fact that the SEC had been given complete access to all of STG's files due to concerns that the SEC said that STG was not providing documents quickly enough and Mr. Budner wanted to protect against the SEC's claims of failure to cooperate in document production. <u>See</u> Ex. B.

9. Mr. Budner made it clear on numerous occasions that the SEC should not view attorney client privileged information and should return such information immediately. See Exhibit "B".

10. Despite being advised of the applicable attorney client privilege, the SEC obviously chose to ignore it, as on January 31, 2005, the SEC requested additional

information regarding information included in emails sent to STG by its attorneys. In particular, a reference was made by the SEC to a letter written by STG's own counsel which could be viewed as critical of STG. The SEC indicated it wanted to know why STG had not followed the advice of its own counsel. After these comments were made by the SEC, the SEC was questioned as to why it was looking at clearly attorney/client privileged information and the SEC indicated that this was done by mistake and that the e-mail was opened inadvertently and this would not happen again. For the next couple of months, it appeared that the SEC was true to its word until a voice mail left by the SEC on the voicemail of counsel for STG indicated that the SEC has again begun to review the attorney client communications and that it does not appear in any way that such review was by mistake as the SEC previously stated.

11. On or about April 1, 2005, the SEC left a voicemail at STG's counsel's office in which the SEC requested a copy of a document it had learned about from reviewing a confidential email from attorney Justin Kam to STG. Once again, a letter was then sent to the SEC advising the SEC that the attorney client privilege had not been waived, a true and correct copy of which is attached hereto as Exhibit "C" . Then on April 6, the SEC was again advised that no privileged documents should be reviewed as the April 1, 2005 letter was not responded to by the SEC. See Exhibit "D" .

12. On April 6, 2005, SEC Senior Special Counsel Jeri D. Dresner faxed a letter to David Feingold, one of STG's attorneys, which clearly showed that the SEC was viewing attorney confidential communications and that the SEC's new rationale for viewing the communications was not possible based on the chronology of events. For example, the letter states that Mr. Feingold was requested to provide a privilege log at the

time STG's materials were seized by the SEC and that by not providing a privilege log, it was the SEC's position that all of the communications were intended to be given to the SEC. (See Exhibit "E"). The problem with the SEC's statements is that there is no way that Mr. Feingold could have been asked to give a privilege log at the time the SEC took the computer disks from STG as this was approximately January 10, 2005 and the law firm of Feingold & Kam did not get involved with dealing with the SEC until Approximately January 25, 2005 when Mr. Budner wrote a letter to the SEC complaining of threats made against him by an SEC examiner (See Exhibit F– Complaint letter to SEC). It was after the distasteful event where Mr. Budner was threatened, that the law firm of Feingold & Kam got involved. Therefore, the SEC's position that it told Mr. Feingold on or about January 10, 2005 to prepare a privilege log is impossible as Mr. Feingold did not become involved in the case until substantially subsequent to that point.

13. On April 7, 2005, Mr. Feingold faxed a letter to Ms. Dresner clarifying the situation. Mr. Feingold's letter has not been answered by the SEC at this time. A true and correct copy of the letter is attached hereto as Exhibit "G" and as a result this action must be filed to protect the attorney client privilege. In summary, STG learned of the potential of giving confidential documents to the SEC on or about January 31, 2005 and at that time the SEC indicated the review was by mistake and would not happen again. Then on April 1, 2005 STG learned that the SEC was again referring to privileged communication and on April 6, 2005, for the first time ever, the SEC has stated that it believes that STG intended to give all of its documents to the SEC and as of the drafting of this document the SEC has not responded to STG's letter of April 7, 2005. Thereby, this action is being filed to protect the attorney/client privilege.

14. STG has no adequate remedy at law.

15. The SEC's violations of STG's attorney client privilege are causing irreparable injury to STG and will continue to do so.

16. The SEC has no need for the privileged material and is examining the privileged material in violation of STG's rights.

17. As a result of these acts by the SEC, STG has suffered substantial harm which will continue to increase.

**WHEREFORE**, Plaintiffs STG Secure Trading Group, Inc., and STG Secure Trading Group, LLC, respectfully request that this Honorable Court enter judgment against the United States Securities and Exchange Commission, grant injunctive relief to Plaintiffs and grant such further relief, including equitable relief, this Court deems just and proper.

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs STG Secure Trading Group, Inc., and STG Secure Trading Group, LLC, (collectively, "STG") by and through undersigned counsel, hereby file this Emergency Motion for Temporary Restraining Order as follows:

1. On January 10, 2005, with no prior warning, Defendant United States Securities and Exchange Commission ("SEC") appeared at STG's office in Boca Raton, Florida, demanded access to STG's computer server, demanded to have CD ROM disks made by STG, demanded that STG immediately comply with these demands or face

action by its regulatory agency. STG complied with the SEC's requests without having the opportunity to view everything that was provided on the disks. See Affidavit of Scott Budner, attached hereto as Exhibit "A." Inadvertently, STG provided the SEC a complete copy of information on its servers including communications with its attorneys.

2. STG has always been of the position that the SEC has no right to view attorney client privileged communications. In fact, Scott Budner, an executive officer of STG, even wrote a letter to the SEC, see Exhibit "B" in support of this contention. In the portion of the letter titled "Additional Documents Requested," Mr. Budner stated that "I believe that all correspondence with any of the multiple lawyers this firms works with are protected by the attorney client privilege" and went on to say regarding the SEC's complete access to STG's files: "which by the way in no way means that I agree that you can review any of my correspondence with my lawyers or personal health information that my have been in the files. I do not think that you took any of that information, but if you did, I request you return it immediately." See Ex. B. The SEC never acknowledged that it obtained these communications.

3. STG made it clear on numerous occasions that the SEC should not view attorney client privileged information and should return such information immediately. The SEC initially acknowledged reviewing one privileged communication but indicated that it was by accident and would not happen again.

4. STG operated under the assumption that the initial viewing was a mistake. However, in April of this year, it became apparent that the SEC continued to review STG's confidential communications with its attorneys and this was not by mistake.

5. In fact, on April 1, 2005, the SEC left a voicemail at STG's counsel's office in which the SEC requested a copy of a document it had learned about from reviewing a confidential email from attorney Justin Kam to STG. Once again, a letter was then sent to the SEC advising the SEC that the attorney client privilege had not been waived.

6. As referenced in the complaint attached hereto, the SEC has now stated that STG intentionally gave the documents to the SEC and was given an opportunity to give a privilege log, however, a review of the chronology of matters in this case, shows otherwise.

8. STG has no adequate remedy at law.

9. The SEC's violations of STG's attorney client privilege are causing irreparable injury to STG and will continue to do so.

10. The SEC has no need for the privileged material and is examining the privileged material in violation of STG's rights.

11. As the SEC has violated STG's rights, STG has a substantial likelihood of success on the merits.

12. As a result of these acts by the SEC, STG has suffered substantial harm which will continue to increase.

**WHEREFORE**, Plaintiffs STG Secure Trading Group, Inc., and STG Secure Trading Group. LLC, respectfully request that this Honorable Court impose a temporary restraining order against the SEC, appoint a special master to examine the seized materials. and grant such further relief, including equitable relief, this Court deems just and proper.

## MEMORANDUM OF LAW

In the case at hand, the SEC obtained STG's computer server contents which were placed on CD ROM disks and related diskettes based on a surprise audit which required the immediate turn over of documents, files and contents of computers. Then, despite numerous assertions of STG's attorney client privilege, first by STG's executive officers and then by STG's counsel, the SEC has disregarded the privilege and viewed email correspondence between STG and its counsel.

In 1997, a case legally similar to the case at hand occurred before the United States District Court for the Southern District of Florida named *Roy Black et al. v. United States of America*, 172 F.R.D. 511 (S.D. Fla. 1997). In *Roy Black*, the United States Government seized several computers, computer discs and diskettes at the residence of attorney Roy Black's client, Salvador Maglutta, who was wanted for drug trafficking, money laundering, obstruction of justice and bond jumping. The Plaintiffs in the *Roy Black* case then filed suit seeking to enjoin the Government from reviewing the computer materials, computers and computer disks until such time as a judicial officer made a determination as to which of the materials were protected by the attorney-client privilege and the opinion and fact work product privilege.

Following its analysis of the law and facts, the *Roy Black* Court ruled in favor of the Plaintiffs, ordering that the materials should remain sealed except as necessary to the detailed process ordered by the Court to create a transcript that would be used to make further determinations. 172 F.R.D. at 516-17. Other cases, both in this District and

elsewhere, have emphasized the importance of protecting privileged documents in this situation. See, eg. *United States of America v. Abbell et al.*, 914 F. Supp. 519 (S.D. Fla. 1995) (appointing special master to examine the seized materials); *United States of America v. Stewart*, 2002 U.S. Dist. LEXIS 10530 (S.D.N.Y. 2002) (appointing special master to examine the seized materials).

STG respectfully requests that this Court follow the precedent set by the *Roy Black*, *Abbell* and *Stewart* courts and order the SEC to immediately halt its improper examination of the seized materials and turn the materials over to a special master for further determinations to protect STG's rights.

Respectfully submitted,

Feingold & Kam, LLC

By: ____________________

David J. Feingold
Florida Bar No. 0892823
Feingold & Kam, LLC
3300 PGA Blvd., Suite 410
Palm Beach Gardens, FL 33410
Phone: (561) 630-6727
Fax: (561) 630-8936

## AFFIDAVIT OF SCOTT BUDNER

1. I, the undersigned, am over 18 years of age and sui juris and have personal knowledge of all of the matters set forth in this affidavit.

2. My name is Scott Budner, I am an officer at STG Secure Trading Group, Inc. and STG Secure Trading Group, LLC (collectively "STG").

3. On January 10, 2005, multiple representatives of the Securities and Exchange Commission ("SEC") appeared at the offices of STG and advised me that they were conducting a surprise audit and that they were to be given immediate access to all of the firm's files and provided copies of the contents of the firm's computer server.

4. I was advised that since STG is an entity regulated by the SEC, my failure to give immediate access to any of the requested information would be deemed a failure to cooperate by STG and thereby make STG subject to regulatory action by the SEC.

5. I immediately gave the SEC access to all of the files of the firm, in fact, they were given access to go into the file room and to start removing files and viewing them. I also began the process of downloading the information from our computer servers to disk.

6. On January 11, 2005, I was advised, by the SEC, that production of information was not being done fast enough and that I was expected to have everything turned over to the SEC on the same date that the request for information was made.

7. I advised the SEC that I was the only person at STG who was providing responses to their numerous requests and while I was working on answering the SEC requests, I was undergoing a legally required internal audit of both of STG's companies by our outside auditors and my wife had just given birth on January 9, 2005 and therefore, my ability to stay until all hours of the night was physically limited.

8. In addition, while the SEC was requesting that I collect all of the information, at the same time they were requiring that I stay in my conference room with them and answer their questions; thus, interfering with my ability to go and get them documents, since I could not be in two places at one time.

9. In addition to all of the other conflicts that I had, I was responsible for preparing a legally required FOCUS report for the NASD, at the same time, or risk that STG would not be permitted to continue to conduct business.

EXHIBIT "A"

10. The SEC was given all of the information it requested and complete and unfettered access to STG files and computer servers.

11. The relationship between myself and the SEC started to become hostile, as the SEC indicated that I was not producing documents quickly enough and therefore, I asked them to provide their document requests in writing.

12. As a result, on January 25, 2005, I wrote the SEC a letter responding to a number of their document requests and in that letter, I specifically told the SEC that I did not want them viewing attorney/client correspondence, as I was not aware if they were reviewing such communications but the document production required the SEC to have so much access and thereby, I notified them of our intent to keep the attorney/client privilege.

13. On or about January 31, 2005, I was advised by the SEC that they were questioning why STG had undertaken a transaction with the Solaris Fund when STG had not followed the advice of its counsel as given in an email. I specifically asked the SEC investigators why they were viewing obvious attorney/client privileged communications and they responded that the review was by mistake, as the email was not intended to be opened and the SEC was not opening any emails between lawyers and STG.

14. The SEC audit continued and on approximately April 1, 2005, it was learned that, in fact, the SEC continued to view attorney/client information, as a voicemail was left by the SEC wherein they requested a certain document based on their review of an email by Attorney Justin Kam. At no time has STG ever intended to give the SEC access to any communications between STG, its officers or directors or employees and any of the lawyers who represent those parties.

15. The SEC has stated that on January 10, 2005, they advised our attorney, Mr. Feingold that he was to prepare a privilege log on January 10, 2005, if he believed any of the documents produced by STG were privileged. The SEC statement is not accurate, as Mr. Feingold and his firm did not become involved with the SEC on behalf of STG, until January 25, 2005. On that date, I wrote a letter of compliant to the SEC about the conduct of one of its examiners and thereby, felt the necessity to have Mr. Feingold involved in communicating with the SEC regarding the document production process.

16. Therefore, for the SEC to claim that Mr. Feingold was involved with the document production process during the same time the SEC was given unfettered access to STG files is not possible based on the chronology of events.

17. STG is being irreparably harmed in that the SEC is viewi 1g confidential communications from our attorneys and utilizing those communications against STG and its clients in the audit process and the handling of the SEC matters regarding STG and its clients.

I swear that the above is true and correct and under penalty of perjury and I hereby assert all of the statements herein.

Scott Budner

04-11-2005
Date

State of Florida
County of Palm Beach

BEFORE ME, the undersigned authority, personally appeared SCOTT BUDNER, who is personally known to me ✓ or has produced identification Dri License (identification produced).

SUBSCRIBED AND SWORN to before me, this 11 day of April, 2005.

NOTARY PUBLIC

Daniel Schapiro
My Com. DD 116667
Expires May 06, 2008

Daniel Schapiro
My Commission DD 116667
Expires May 06, 2008

SECURE TRADING GROUP

MEMBER NASD, PHLX, NFA, SIPC

(561) 988-6320
Fax (561) 988-5537

2700 North Military Trail • Suite 150 • Boca Raton, FL 33431

Via Hand Delivery

January 26, 2005

Mr. Carlos Gutierrez
Securities & Exchange Commission
801 Brickell Avenue, suite 1800
Miami, FL 33131

<u>In your note titled "Additional documents Request for 1/25/2005"</u>
you state that *"No documents were produced today [1/25/05]. All items pending as of 1/24/05 remain outstanding."* I take issue with this statement especially in regards to the December 2005 Quarterly Focus which you requested for both STG, Inc & STG, LLC. As you are aware, both time consuming reports are due Wednesday 1/26/05. I have had to budget my time between production of documents for the unscheduled audit and allotment of my time to our Independent Auditors while completing these reports. So my tasks to complete both Focus Reports serve the purpose of your audit as well.

<u>In response to your note entitled "Documents still pending as of 1/24/05.":</u>

<u>Commission schedules</u> – commissions can still be derived by utilizing the Penson clearing firm website with the username and password provided by Scott Budner. For instances where this is not feasible, the payments ledger and check stubs in each month's "Bills Paid file" show detail for derivation of payments. SEC was granted unfettered access to all "Bills Paid files" without the supervision or intervention of any STG personnel.

<u>In response to soft-dollar arrangements and order flow</u>, I believe my original written response addresses this issue.

<u>Merrill Statements</u>: have already been provided via CD-ROM.

<u>Cash Receipts & Delivered Blotters</u>: I believe my original written response addresses this issue.

<u>Exception Reports:</u> I believe my original written response addresses this issue.

Exhibit "B"

Branch Inspections for 2004: I believe we have already addressed this issue as part of a lengthy interview as well as reports provided showing my review & correspondence with Westbury office and Dallas office. (also addressed in my previous written response)

Annual Compliance meeting 2004: completed with Westbury office & Dallas office.

Continuing Education (firm element): The firm held various meetings regarding software, self-clearing with registered personnel of the firm. A firmwide class was not conducted.

List of Accounts for Associated Persons at other BD's. As previously stated, the firm maintains F-13 forms for registered traders, receives outside brokerage statements for those accounts disclosed on said forms, reviews and signs the statements, then scans them into PDF form for retention.

List of RR's with outside businesses: As with the item above, the SEC was granted unfettered access to all registered personnel files without the supervision or intervention of any STG personnel. Said files contain u-4 forms with "outside business" activities disclosed during interview and/or registration.

List of RR's with 5% or more interest....for any company: As with the item above, the SEC was granted unfettered access to all registered personnel files without the supervision or intervention of any STG personnel. Said files contain u-4 forms with this information.

Commission reports for all RR's for 2004: SEC was granted unfettered access to all "Bills Paid files" without the supervision or intervention of any STG personnel.

Moneylines for Penson YJ & YK branch for 11/30/04: This item was *not* previously requested by SEC. The request for "any day" within the month of November 2004, and the item was promptly provided.

Tapes of all recorded calls during 11/04: This item was answered verbally during one of the many interviews with SEC staff. STG does not make Tape Recording of all calls mandatory and therefore does not compel retention.

Breakdown and number of cash/margin/option/DVP....: A list of discretionary and DVP accounts were already provided.

Restricted Accounts during 9/04 – 11/04: I am not aware of any brokerage accounts that are restricted for Margin purposes.

Selling Agreements & Due diligence: no further documents exist beyond those provided.

Stocks that STG made a market in as of 11/30/2004. I believe this information has already been provided from the Westbury, NY office as well as Dallas TX.

List of Penny Stocks transacted in 2004 I believe this information has already been provided by our Dallas TX office.

List of 144 transactions done in 2004 Form 144s are contained in Customer Account folders. We have no further information on this request.

Securities Received and Delivered Blotters for 2004 This item was already answered. No further information exists.

List of customers whose orders were routed to Market Making Desk and why: This item was already addressed during a lengthy interview between Scott Budner & SEC auditors. To recap- orders are sent to market makers by customers own choice who may not want to enter their orders into our software which interacts directly with Market Participants. Some customer reasons may include, but are not limited to: working a large institutional order, desiring a VWAP (volume weighted average price), convenience and/or time.

In response to your note entitled "Documents still pending as of 1/24/05.": (LLC)

You say "All circled items on original document": We believe this is incorrect as many items have already been provided.

144 Files no further information exists regarding this request.

All Profit Participation Agreements: This item has also been addressed. There is no further agreement beyond original documents for members Alan Weiner & Scott Budner. Signed documents showing new members is the only agreement on file with any members added/removed during 2004 and those have already been provided.

Documents re Logisoft Settlement: Settlement doc was the only item requested and it is was promptly delivered to SEC auditors.

All notifications of capital withdrawals. The ledger entries and wire advices/check stubs are in "Bills Paid Files". No further documents exist.

Documents re: Wire to Bernet: Wire confirmation and Settlement already provided; no further documents exist.

Accounting of Funds received from Feingold The settlement funds in escrow have been fully distributed and STG does not hold further documentation on this item.

All documents re Solaris Capital Infusion and subsequent loan to Rooney. All documents have been provided; as for the specifics mentioned in your request, see STG itemized response letter from earlier this week.

Instinet Statements 7/4 8/4 9/4 As previously stated Instinet Clearing ceases to exist. STG is attempting to obtain said items.

Clearance and settlement summaries for Penson (YJ & YK) for 9/4 – 11/04. These items were already provided to SEC auditors. They are contained in the monthly Financial binders of both STG Inc & STG LLC.

**Additional documents requested:**

Explanation of relationship with MH Sanford – it is a DVP account whose assets are not domiciled with STG. We provide execution and soft dollar admin only to this account. Nanodynamics: See original response from this week.

AML independent tests for 2004: STG obtains social sec # and/or tax id for any customer and or registered rep.

It should be noted that a list of new documents were received for four new items on the afternoon of 1/25/2005.

Yesterday I advise you that I wanted all of your questions in writing. You then asked me if my lawyer advised me to do this and I did not answer your question because I believe that all correspondence with any of the multiple lawyers this firm works with are protected by the attorney client privilege and I was quite surprised that you asked about the contents and advice of communications from my lawyer to me. However, I think this issue should be clarified so that you understand why I want everything in writing.
First, when you originally showed to my office unannounced I gave you complete access to all of my file cabinets and all of my computer servers without any oversight (which by the way in no way means that I agree that you can review any of my correspondence with my lawyers or personal health information that may have been in the files. I do not think you took any of that information but if you did, I request you return it immediately).
You also were freely given access to take whatever documents you needed into my conference room.
You are aware that I am also undergoing a Philadelphia stock exchange audit, an internal audit from our outside accountants as well as the self clearing transformation all at the same time (in addition my wife just had our first child).
I have been advised by our auditors that after your usage of our documents, many documents appear to be disorganized and missing and the auditor is indicating he is now having trouble preparing reports because files that were in complete chronological order have been returned in absolutely no order. This is making my task extremely difficult. I

am not trying to cast any blame as I recognize being confrontational with the government cannot be good for this firm, however, it seems this process has already become confrontational and the last thing I want to do is have a confrontation with you all. Therefore, I just want matters in writing to memorialize what is happening as I believe, with the limit of just myself and all of the matters going on here, I have been more than forthcoming with you.

Sincerely

Scott Budner
STG Secure Trading Group, Inc.
STG Secure Trading Group, LLC.

**FEINGOLD & KAM**
ATTORNEYS AT LAW

Gardens Plaza Office Tower
3300 P.G.A. Boulevard, Suite 410
Palm Beach Gardens, FL 33410
Telephone 561-630-6727
Facsimile 561-630-8936

Via fax: 305-536-4158

April 1, 2005

Mr. Carlos Gutierrez
Securities & Exchange Commission
1401 Brickell Avenue, Suite 200
Miami, FL 33131

Re: STG Secure Trading Group

Dear Carlos:

I got your voicemail requesting a copy of the opinion letter from the Sadis & Goldberg law firm involving a referral agreement between STG and Hedgeco. It is my understanding, from your message, that this was a matter handled by Mr. Kam, who is no longer at my firm. Therefore, it may take some time to locate this document.

Please be further advised, the indication from your message was that you learned of the Sadis opinion letter by reviewing an email from Mr. Kam to Mr. Budner. As previously discussed, this firm has not agreed to waive attorney/client privilege regarding STG and it was our understanding that you had agreed not to view any communications that you may have received as a result of your downloading the contents of my client's entire server.

I will gladly search for the letter you are referring to and produce it to you so long as it is not the result of your reviewing attorney/client privilege communications, since that issue has been previously addressed.

Thank you for your assistance with this matter.

Sincerely,

David J. Feingold /tl

David J. Feingold, Esquire

DJF/tl

Exhibit "C"

**FEINGOLD & KAM**
ATTORNEYS AT LAW

Gardens Plaza Office Tower
3300 P.G.A. Boulevard, Suite 410
Palm Beach Gardens, FL 33410

Telephone 561-630-6727

Facsimile 561-630-8936

Via fax: 305-536-4158

April 6, 2005

Mr. Carlos Gutierrez
Securities & Exchange Commission
1401 Brickell Avenue, Suite 200
Miami, FL 33131

Re: STG Secure Trading Group

Dear Carlos:

This is a follow up to my prior communication to you regarding your request for the Sadis and Goldberg letter. It appears that your learning of that letter is a direct result of your reviewing an attorney/client communication between Mr. Kam and STG. Although the letter may actually be helpful to STG, we do not believe it would be legally appropriate for us to provide you a copy, since you have been advised that STG does not desire to waive the attorney/client privilege. Please advise us, in writing, immediately, if you will be attempting to view any further attorney/client communications. It was our understanding that you had segregated all of such communications and were not reviewing or utilizing them.

We will continue to keep you apprised of the STG situation. If you need additional information, please feel free in contacting the undersigned.

Sincerely,

David J. Feingold/tl

David J. Feingold, Esquire

DJF/tl

EXHIBIT "D"

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SOUTHEAST REGIONAL OFFICE
SUITE 1800
801 BRICKELL AVENUE
MIAMI, FLORIDA 33131
(305) 982-6300

BY FACSIMILE

April 6, 2005

David Feingold, Esq.
Feingold & Kam
Gardens Plaza Office Tower
3300 P.G.A. Boulevard, Suite 410
Palm Beach Gardens, FL 33410

RE: STG Secure Trading Group

Dear Mr. Feingold:

This is to acknowledge receipt of your letters dated April 1, and April 6, 2005, to Carlos Gutierrez relating to the staff's request for documents in connection with the ongoing examination of STG. Specifically, Mr. Gutierrez requested a copy of the Sadis & Goldberg letter referenced in a July 15, 2004 email, which is a record of STG and should be produced pursuant to Section 17(a) of the Exchange Act. As of today, STG has failed to produce this document. We are renewing our request that this document be produced to the staff by Friday, April 8, 2005.

In addition, your letter contains certain statements and numerous inaccuracies to which we must respond. Regarding the email production, Mr. Budner provided the staff with a DVD and a CD containing the requested emails. At the time they were produced and being reviewed by the staff, the staff told you that if there were any emails to which you were claiming attorney-client privilege, it was your obligation, as counsel for STG, to create a privilege log. As you know, for each email, a privilege log must identify: (i) the author, addressees, indicated recipients, or blind copy recipients; (ii) its date and subject matter; (iii) all persons to whom it has been distributed, shown, or who have been informed of its contents; (iv) the nature of any privilege asserted; and (v) the name, address, and telephone number of any attorney(s) and client(s) involved. To date, we still have not received a privilege log from you. Your position that the there was an agreement not to view any communications is wrong and the staff never downloaded the contents of STG's entire server as you allege in your April 1, 2005 letter.

EXHIBIT "E"

It is the staff's position that STG provided the requested emails electronically and that there has never been a claim of privilege asserted for any of the emails. It is unclear from your letters whether you are now asserting a claim of privilege for any of the emails. If you intend to assert a claim of privilege for any of the emails, you must provide a privilege log for those items by Friday, April 8, 2005.

Please call me at (305) 982-6356 if you have any questions.

Sincerely,

Jeri D. Dresner
Senior Special Counsel

TOTAL P.03

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SOUTHEAST REGIONAL OFFICE
SUITE 1800
801 BRICKELL AVENUE
MIAMI, FLORIDA 33131
(305) 982-6300

# FACSIMILE TRANSMITTAL

DATE: 4/6/05
TO: Mr. David Feingold, Esq.
COMPANY: Feingold & Kam
FAX NO: (561) 630 - 8936
Pages: 3 total

FROM: Jeri Dresner
E-Mail:
TEL. NO: (305) 982-6356
FAX NO.: (305) 536- 4158

*IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CONTACT THE SENDER.*

---

MESSAGE:

Please see the attached.

*THIS FACSIMILE MAY CONTAIN PRIVILEGED AND NONPUBLIC INFORMATION. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE AND THOSE WHO HAVE BEEN SPECIALLY AUTHORIZED TO RECEIVE IT. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, OR THE AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL TO US AT THE ABOVE ADDRESS BY REGULAR POSTAL SERVICE WITHOUT MAKING A COPY. THANK YOU FOR YOUR COOPERATION.*

SECURE TRADING GROUP

(561) 988-6320
Fax (561) 988-5537
MEMBER NASD PHLX, NFA, SIPC
2700 North Military Trail • Suite 150 • Boca Raton, FL 33431

VIA Hand Delivery

January 26, 2005

Morgan Chong
Securities & Exchange Commission
1401 Brickell Avenue, suite 200
Miami, FL 33131

**WRITTEN CORRESPONDENCE ONLY FOR REMAINDER OF AUDIT**

Mr. Chung:

Please consider this formal notice that the remainder of the SEC audit should be conducted via written correspondence only. This was previously requested in a response this week by STG to the SEC auditor's request for documents.

Today, January 26, 2005 Mr. Carlos Gutierrez reacted to my written response by jumping out of his chair and cornering me in my own conference room; he demanded more detail regarding my AML testing procedures (an item addressed in the 'additional documents' section). He literally stood face to fact at me within inches, blaring "YOU SHOW ME THIS AML TESTING FOLDER NOW....I WANT TO SEE IT RIGHT NOW...NO YOU SHOW IT TO ME RIGHT NOW THIS SECOND....TAKE ME TO THE FILE" Aghast, I led him to the file room where he continued "I WANT THIS FILE NOW". I attempted to show him the New Account Documents as I began to explain that we first obtain financial & personal information including a tax id and Social Security Number. He interrupted my explanation and began to complete my own sentence, launching into his own explanations as he has done in the past. I said that I have no folder documenting such a test. He then shoved a pen and my response letter at me demanding that I write next to the item that I did not have AML testing....again coaching the answer and forming my response. He then informed me that I was in violation of an SEC Rule as well as possibly the Patriot Act.
I was so taken aback; I have never felt so bullied by any auditor or examining authority. The abusive tone and insinuations have left me more than uncomfortable. My office has become a place where I feel threatened and harassed. I find this hostile treatment and abuse of power by a Government Agency to be appalling and, quite frankly, frightening.

EXHIBIT "F"

Combined with Tuesday's baiting questions on whether I was being coached by my attorney, I will only answer questions that are posed to me in writing. And, I will only respond in writing. I am extremely scared to even be complaining about one of you since you have so much power over my firm, I feel like although I morally have a responsibility to complain, I am also risking my firm's business future by telling you the truth as you will undoubtedly now pursue your audit more vigorously because of my complaints. Nonetheless, I do not feel like I should be afraid to show up to my own office

If you desire further clarification on any items asked and answered to this point, I will promptly respond in writing.

Sincerely,

Scott Budner
STG Secure Trading Group, Inc.
STG Secure Trading Group, LLC.

**FEINGOLD & KAM**
ATTORNEYS AT LAW

Gardens Plaza Office Tower
3300 P.G.A. Boulevard, Suite 410
Palm Beach Gardens, FL 33410

Telephone 561-630-6727 Facsimile 561-630-8936

Via fax: 305-536-4158

April 7, 2005

Ms. Jeri D. Dresner
Securities & Exchange Commission
1401 Brickell Avenue, Suite 200
Miami, FL 33131

Re: STG Secure Trading Group

Dear Ms. Dresner:

Thank you for your letter of April 6, 2005. I am hopeful that after you read this letter, you will see that there has never been a waiver of the attorney/client privilege and that we specifically request that you cease the review of all copies of any information contained on STG's CD ROMs, which your office presently possesses.

Your letter of April 6, 2005 specifically states that "Mr. Budner provided the staff with a DVD and a CD containing the requested emails. At the time that they were produced and being reviewed by the staff, the staff told you that if there were any e-mails that you were claiming attorney/client privilege, it was your obligation, as counsel for STG to create a privilege log." Unfortunately, the record clearly shows that never happened, as the chronology below will clearly prove. The SEC never told me that because this firm was not involved until after the fact. The chronology is:

1. On January 10, 2005, the SEC appeared at the offices of STG, via surprise and without any forewarning. At that surprise visit, the SEC demanded access to STG's computer server and to have CD ROM disks made and given to the SEC.

2. On January 12, 2005, a CD and DVD containing the contents of STG's server was provided to the Commission. The Commission did not give Mr. Budner the opportunity to review the disks, as he was advised that since the downloaded server information had been requested more than 24 hours ago, he would be considered to be intentionally not cooperating with the SEC if he did not turn over the disks.

EXHIBIT "B"

3. On January 26, 2005, Mr. Budner stated that he was threatened by an employee of the SEC and he wrote a letter to Morgan Chong at your office, filing a complaint. At that time on January 26, 2005, this firm was also contacted due to the concerns raised in Mr. Budner's complaint letter.

Therefore, your letter of April 6, 2005, which states that I was specifically told to prepare a privilege log would have been impossible since my firm's involvement in the case did not occur until after the disk was demanded from STG.

Furthermore, on January 26, 2005, Mr. Budner wrote a letter to Mr. Gutierrez, at the SEC, in which he specifically stated that he would not discuss any attorney/client privilege information with the SEC and he further stated "which by the way, in no way means that I agree that you can review any of my correspondence with my lawyers."

Therefore, a firm record indicates that STG has never waived the attorney/client privilege and, in fact to the contrary, has specifically stated that it does not want the SEC reviewing attorney/client correspondence.

Next, on January 31, 2005, the SEC indicated to STG that STG had failed to follow its legal counsel's advice, as proven by an email sent from this firm to STG advising that it had to receive an opinion letter before doing the transaction with the Solaris Funds. STG advised the Commission that it was not appropriate to be referencing the attorney emails and the Commission assured STG that the email was reviewed by mistake and in their review, any email from a sender that was identified as an attorney or a law firm would not be opened. Taking the Commission on its word, STG took no further action and there was no further discussions regarding communications.

Then, on April 1, 2005, a voicemail was retrieved from the SEC to this law office in which the SEC requested a copy of a document it had learned about from reviewing a confidential email from Attorney Justin Kam to STG. The SEC was immediately advised, in writing, both on April 1st and 6th that it was not appropriate to be reviewing attorney/client privileged emails. The SEC did not respond to the April 1st letter until five days later.

Please be further advised that you may be in possession of emails from the following persons: David Feingold, Justin Kam, Justin Pearson, Tricia Lovejoy, Reba Worsham, Jim Jarvis, Alicia Mujica, Stephen Mendelsohn, David Chase and Robert Schwartz. It is our position that all emails involving the above listed persons are privileged. We request that you agree, in writing, to return the computer disks provided to you by STG, as they all involve law firm communications.

If you are unwilling to do this, my client has requested that we take appropriate measures to protect them. Unfortunately, my client is gravely concerned that by their taking any action, there will be severe retribution against them. I would appreciate your utmost professionalism in handling this and contacting me, immediately, as I think the

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

05-80
CIV-COHN

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** PALM BEACH COUNTY

STG SECURE TRADING GROUP, INC., and STG SECURE TRADING GROUP, LLC

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Justin M. Pearson, Esq., Feingold & Kam, LLC (561)630-6727
3300 PGA Blvd., Suite 410, Palm Beach Gardens, FL 33410

**DEFENDANTS**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

MAGISTRATE JUDGE SNOW

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

9:05CV80309CV JIC/LSS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 U.S.C. 1391(e)

Brief description of cause:
Injunctive Relief

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 533816 AMOUNT 250.00 APPLYING IFP JUDGE MAG. JUDGE